### DRAKE *v.* DRAKE *et al.*

(*Supreme Court, Special Term, New York County.* January, 1889.)

POWERS—TESTAMENTARY POWERS—APPOINTMENT—"LAWFUL ISSUE."

Testator gave a power of appointment to his adopted daughter, who was generally regarded as his illegitimate child. His sisters and their children did not treat her with affection, at which testator, who was very fond of her, was angry, and, before making his will, he said that he would "make a lady of her in spite of them." She was younger than most of his sisters' children, and would therefore more probably receive care and attention from the grandchildren than the children of testator's sisters, if she should live to old age. Testator devised to her for life, and after her death to such of her lawful issue as she should appoint. In default of appointment, the estate was limited, after her death, to her lawful issue in fee, in equal shares; but, if such issue should be of unequal degrees of consanguinity, the issue of a deceased parent was to take the share the parent would have taken if living. The ninth clause provided that, if said daughter should die without issue,

she should have power to appoint the property devised to any of testator's sisters, "or to all or any of the lawful issue" of them, in such shares as she should deem proper. She died without issue, and by will appointed the property to the grand-children of testator's sisters; their parents then being living. *Held*, that in view of the facts of the case, and of the context of the will, the "issue" of testator's sisters mentioned in the ninth clause included any of their descendants, and the appointment was valid.

Action by Lawrence Drake against Samuel Drake and others, to construe the will of James Drake, deceased, by which a power of appointment was given to Mary Hopeton Drake. The latter exercised the power by last will, which is construed in *Wetmore* v. *Institution, ante,* 179.

*Joseph H. Choate* and *William V. Rowe,* for plaintiff. *James C. Carter, A. P. Crane,* and *John T. McKenzie,* for defendants.

INGRAHAM, J. The question presented in this action is a very narrow one, and its determination depends upon the meaning to be given to the words "lawful issue," as contained in the power of appointment given by the testator, James Drake, to his adopted daughter, Mary Hopeton Drake, by the ninth clause of his will. The word "issue" was given by the early English cases a broad meaning, and in its primary sense as co-existent and synonymous with "descendants." Thus in 2 Jarm. Wills, 328, it is stated: "The term embraces descendants of every degree, and, unless restricted by the context, cannot be said to apply to descendants at a given period." In the late case of *Ralph* v. *Carrick,* 11 Ch. Div. 885, BRETT, L. J., says: "In ordinary parlance, the *prima facie* meaning of 'issue' is 'children;' in legal documents, its *prima facie* meaning is 'descendants.'" In *Cannon* v. *Rucastle,* 8 C. B. 876, MAULE, J., says: "Issue has two senses,—one comprehending all descendants, and, if there be anything to show that it does not mean that, then it means immediate issue,—children;" and in the case of *Palmer* v. *Horn,* 84 N. Y. 519, the rule is stated as follows: "The word 'issue' is an ambiguous term. It may mean descendants generally, or merely children; and whether in a will it shall be held to mean the one or the other depends upon the intention of the testator, as derived from the context or the entire will, or such extrinsic circumstances as can be considered. * * * In England at an early day it was held in its primary sense, when not restrained by the context, to be co-extensive and synonymous with 'descendants,' comprehending objects of every degree. But it came to be apparent to judges there that such a sense given to the term would in most cases defeat the intention of the testator; and hence in the latter cases there is a strong tendency, unless restrained by the context, to hold that it has the meaning of 'children.' It will at least be held to have such meaning upon a slight indication in other parts of the will that such was the intention of the testator." My understanding of the rule, as stated in this and the other cases cited, is that, while the word in its *prima facie* significance is synonymous with "descendants," the meaning to be given to it will depend upon the intention of the testator, as ascertained by the context, or other facts and circumstances that can be considered; and unless there is some slight indication that the testator intended to use the word in its restricted sense, it will be construed to mean "descendants" generally.

By the seventh clause of the will the testator gave to Mary Hopeton Drake, his adopted daughter, 11 houses and lots for her natural life. By the eighth clause the testator provides that, in case the said Mary Hopeton Drake shall leave lawful issue surviving she shall have power to devise or appoint by her last will and testament, or by any instrument in writing executed under her hand and seal in the presence of two or more witnesses, the said 11 houses and lots of land to all or any or either of said issue as she may, in her discretion, think proper, and in such share or proportion as she may think proper; and it is then provided as follows: "And in default of making such devise or appointment I give and devise the eleven houses and lots of land herein last above mentioned

to the said Mary Hopeton Drake during her natural life, to her said lawful is-
sue from and immediately after her death forever; and if such issue should con-
sist of more than one person, and should be of equal degrees of consanguinity,
then the said estate thereby given and devised to them is to be divided among
them in equal shares; but if such issue should consist of persons of unequal
degrees of consanguinity, then the issue of any deceased parent shall take the
share which the said parent of such issue would have taken if he or she had
been then surviving." The ninth clause is as follows: "*Ninth.* In case of
the death of the said Mary Hopeton Drake without leaving lawful issue sur-
viving at the time of her decease, then, and in such case, I give and devise to
her full power and authority to devise or appoint by her last will and testa-
ment in writing, executed by her in the manner hereinbefore mentioned, the
said 11 houses and lots of land therein last above mentioned, and each and
every of them, to all or any or either of my sisters, Susan Ann Drake, Sarah
Ann Lawrence, and Mary M. Keese, or to all or any or either of the lawful issue
of my sisters, from and after the death of the said Mary Hopeton Drake, for-
ever thereafter, and in such shares and proportions as she may think proper,
and in such case I hereby give and devise the same in accordance with such
devise or appointment." The said clause also contains a devise to the sisters,
or, in case of their death, to their issue, in equal shares, in case no appoint-
ment is made.

Mary Hopeton Drake died unmarried and without issue, leaving a last will
and testament, whereby she attempted to execute the power given by the ninth
clause of the will, as to several of the said 11 lots of land, in favor of the
grandchildren of the sisters of James Drake, the testator; the parents of the
persons in whose favor the power was exercised being at the time of the death
of Mary Hopeton Drake still alive. It is claimed by the plaintiff that the ap-
pointment by Mary Hopeton Drake, under this power, in favor of the grand-
children of the sisters named, was unauthorized and invalid, under the terms
of the will of James Drake, during the life-time of the parents of the persons in
whose favor the power was exercised; and that the words "lawful issue" au-
thorized an appointment to the children of the sisters of James Drake, and not to
the grandchildren. The only question to determine is, which of the meanings
before indicated is to be given to the words "lawful issue," contained in the
power of appointment above mentioned? It will be noticed that the words "law-
ful issue" were used by the testator three times in the ninth clause of the will.
The first instance is when he refers to the issue of the life-tenants, and by refer-
ence to the eighth clause it will be seen that he used the words "lawful issue" in
this connection as synonymous with "descendants;" for by the eighth clause he
gives the property to Mary Hopeton Drake's said lawful issue, and then provides
that if such issue shall consist of more than one person, and shall be of equal
degrees of consanguinity, then the estate given to them is to be divided among
them in equal shares; and if such issue shall consist of persons of unequal de-
gree of consanguinity, then the issue of any deceased parent shall take the
share which the said parent of such issue would have taken if he or she had
been then surviving.

It would be impossible to restrict the meaning of the words "lawful issue,"
as used in the eighth clause of the will, to the children, because children could
not be of unequal degrees of consanguinity. The words "lawful issue" are
also used at the end of the ninth clause, where provision is made in case of
the failure of Mary Hopeton Drake to exercise the power of appointment con-
ferred upon her, and there the words "lawful issue" are not used as being
synonymous with "children;" the intent being that the descendants of each
sister should take the share that the sister would have taken had she been liv-
ing. The power of appointment is not, however, a provision whereby the tes-
tator himself exercises the discretion as to the persons to whom the property
shall vest. He there creates a class among whom he authorizes his adopted

daughter to distribute the property left to her for life. The discretion as to the person in the class to whom the property shall go is to be exercised by the daughter. Within the class named she is given absolute discretion. She can give the property to all or any of his sisters, or to all or either of the lawful issue of his sisters, and in such shares and proportions as she may think proper. It was not the share of the parent that the issue of either of his sisters were to take, because the daughter could entirely ignore the testator's sisters, and devise to one or more of their issue; and all the language used would seem to indicate an intention of the testator to give his daughter the most unbounded discretion as to the persons within the class designated by him in whose favor she should exercise the power; and from the language used, and the meaning given to the word "issue" by the testator by the eighth clause of the will, so far as there is any indication of his intention, it is that the testator intended to include within the class to whom his daughter had power to dispose of the property his sisters or their descendants. If I am at liberty to consider the facts proved on the trial as to the circumstances under which the will was made, they would, I think, go to confirm this construction.

Mary Hopeton Drake, the appointee of the power, had been adopted by the testator, and it was understood in his family that she was his illegitimate daughter. He had always displayed great affection for her, and she had not been treated by the testator's sisters and their children with the cordiality and affection which they had shown towards each other. One of the witnesses says that once, when the testator was angry in regard to what he considered the ill treatment of his daughter, he said he "would make a lady of her in spite of them;" and this was in 1865 or 1866, before the will was made. It was argued by the plaintiff that it was to compel a recognition of the testator's daughter from his sisters and their children that this discretion was given to his daughter. But the evidence is that his daughter was younger than most of his sisters' children; and, assuming that she would live to the age when she would require care and attention, she would be much more likely to receive it from the sisters' grandchildren than from the sisters' children. It could not be determined until the daughter had reached middle life whether or not she would have children of her own to whom under the will the property would then go, and it was to a period after middle life of the daughter that the testator must have looked forward when he vested this discretion in his daughter. Considering the whole will and the circumstances proved, I can see no indication that the testator intended to limit the discretion vested in his adopted daughter to the children of his sisters, but it would appear to have been his intention that it should include the descendants of his sisters. I am therefore of the opinion that the execution of the power of appointment was valid, and that there should be judgment accordingly. The judgment should be settled, on notice.